May it please the court, my name is Roderick Walson. I represent the water districts on this appeal. I'll present the opening argument. My colleague Steve Abbott will present the rebuttal. This issue, of course, this case raises the question of whether the tribe in this case, the Agua Caliente tribe, has a reserve right in groundwater underlying its reservation. And the question breaks down into two overriding questions. The first is whether New Mexico's limitations apply in determining whether a reserved right impliedly exists or whether those limitations only come into play in quantifying the right. And the second question is, assuming that New Mexico's limitations apply, does the tribe in this case, does its claim to reserved right in this case, meet New Mexico's limitations? So those are the issues I'd like to address. Turning to the first question. Before you get to that, this case is trifurcated and that raises some issues all on its own. Am I right that the party stipulated to trifurcate the case? Yes, that's correct. And am I right that the, and for goodness upon what the first issue would be decided in phase one? Yes, that is also correct. That was the issue before the court in phase one. Phase two and phase three would come afterwards, assuming that the court does uphold the tribe's claimed reserved right in groundwater. So maybe you could just keep in mind, as you go forward, I'm interrupting right at the beginning, but I can tell you what my problem is. It seems to me that if phase one is aimed at answering the question, in other words, the existence of the right, then I have a real hard time with the application of winters and New Mexico for the reasons that you're just getting ready to address. And one of the things I would like you to think about is, and I'm not so sure it matters when New Mexico gets applied, as long as it gets considered. And I don't think the district court has said it's not going to apply it. I think it didn't apply to phase one. So maybe you could just keep that in mind as you go forward. That would help me. Well, our view is that New Mexico comes into play in both phase one, which is whether a reserved right exists, and in phase three, in quantifying the tribe's right, if indeed it has a reserved right. But the first question, before you ever get to the quantification issue, is whether the tribe has a reserved right in groundwater. So I'm wondering why that's even a question. So there's no dispute, right, that the tribe has a reserved right in water, correct? Well, normally the answer would be yes, but that issue has never been upheld. The tribe, in this case, has an adjudicated right to use surface water, and so the question of whether the tribe has a reserved right in the surface water has never come into play. So I can't concede the issue, but I would say, however … Well, Council, the problem I'm having with your position is, this is very arid desert land that we're talking about, and it's worthless without water. Right. And surface water is not available for more than perhaps a few weeks in the year. So the only water that everybody relies on is the underground water, right, the aquifer. And so the question is, do they have a right inherent in the creation of the reservation to water from below the surface? Isn't that what we're wrestling with here? Well, I think that certainly is a major issue in the case. In fact, it's the, I think, the predominant issue that we presented in our opening and brief and reply briefs. Our argument … I guess, really, it's a very pragmatic question, and that is, how can we possibly assume that when the President and then later Congress, through its various statutory changes, created this reservation, that it didn't contemplate an entitlement to water? Because otherwise, all the Indians would have died. There wouldn't have been any way to sustain life. Well, we're not making an argument that the tribe does not have a reserved right in surface water. And the question was whether … Well, forget about surface water, because there's not enough of it to get them through a year, or maybe a few weeks at best, in a rainy winter, which doesn't happen very often in that part of California. Agreed. So we're talking about groundwater. And the question … Whether they have an implied right to a pertinent groundwater, right? And under winters, the question is whether that's necessary, access to groundwater, in order to fulfill the purpose of the reservation, right? Well, here's our argument, Your Honor. Our Supreme Court, in New Mexico, 1978, held limited the reserved rights doctrine. It said these rights are not broad, they're fairly limited. They are limited in the sense that the right exists only if it is necessary to satisfy the primary purpose of the reservation and prevent them from being entirely defeated. But in that case, the government reservation was a national forest, was it not? And water that was used by downstream landowners for agricultural purposes. Well, that's true. Here we're looking at a reservation to which the tribe is being relegated. Land is created in the name of the tribe so that the tribal members can engage in subsistence farming and other activities to build their homes there and to make that their permanent dwelling. And that's a very different reservation from the reservation that was at issue in New Mexico, is it not? Well, first of all, to respond to the first response to your point would be that the Ninth Circuit, in two cases, the Walton case and the Adair case, has held that the limitations of the reserved rights doctrine that were established in New Mexico apply to Indian reservations. So that's the first answer. The second answer, and this is, I haven't had a chance to say this yet, and it responds to, I think, all the questions that the panel has asked, is that the tribe does, indeed, have a right to groundwater. It has a right to groundwater under California law. Under California law, all overlying landowners have correlative rights to use groundwater underlying their land. Okay, I get that. But I want to go back to your point, and I'm looking at the summary of argument in your brief. You say, under the reserved rights doctrine, the government, in reserving lands from the public domain for federal purposes, such as Indian purposes, may impliedly intend to reserve water rights for the lands. So you agree to that. You say, under New Mexico, that a federal water right is impliedly reserved only if it's necessary to accomplish the primary reservation purposes. So you agree to that. So that, if it's necessary to accomplish the primary reservation purposes, then there's a reserved right. You agree to all that, right? Because you said it in your brief. Yes. Okay. Why would one distinguish at that level between surface water and groundwater? I don't get it. It's all water. Some of it's above the ground. Some of it's below the ground. It all has two hydrogen molecules and one oxygen molecule. What's the principled reason for determining where the right is to distinguish between what's on top of the ground and what's below the ground? There is a very logical basis for distinguishing between surface water and groundwater. It was established for the purpose because non-Indian appropriators were acquiring prior rights to all the water of the West under the state priority rule of first in time, first in right. And because of that, Indian tribes had no water for their reservations. That's precisely what the Supreme Court held in Winters. It said all these upstream appropriators in the Milk River in Montana had acquired prior rights under priority rule of first in time, first in right. Therefore, there was no water for the tribe's reservation. But the priority rule that applies to surface water does not apply to groundwater. Under California's correlative rights doctrine, all overlying landowners have correlative rights in groundwater underlying the reservation, and no landowner has priority over anyone else. But we're dealing with a federal right here, and if a federal right exists, then California groundwater laws are preempted by whatever the federal right is. Isn't that true? If the federal right exists, California law is preempted. We absolutely agree with that. And we have to answer the question whether in this particular case there is created a federal right in the tribe to groundwater a pertinent to the creation and purpose of creation of this reservation. The federal law will preempt California's law of groundwater if there is a reserved right. But the question in this case is, does the tribe have a reserved right? That question turns on an application of New Mexico and its requirement that the right be necessary to accomplish the primary purpose. I think you might be right about that. So let me ask you. I understand, we all understand, your briefing is excellent, by the way, and I think we get that. So let me ask you this. I think your brief talks about, characterizes the district court opinion as holding that there is a reserved right to the groundwater, which would be new news. That would be a, I don't think there's federal law that's ever said that, controlling federal authority. So it's a very significant ruling and I appreciate that. But that's on EOR 8. But on EOR 9, the district court went on to say, whether groundwater resources are necessary to fulfill the reservation's purpose, that is one prong of the Winters Test, whether it's necessary is a question that must be addressed in a later phase of the litigation. Understanding that, that the district court said that, which means, I think it means, I might get to, you know, New Mexico later, come to that later. Isn't it possible to characterize this district court ruling as not establishing that the right to groundwater exists in this tribe, but that it might, depending on what happens in phases 2 and 3? No, I don't think that would be a fair characterization. Well, okay, okay. I know, I mean, that's the answer I expect from your briefing. But look, but what about this statement then, which is a quote from EOR 9, from the district court, whether groundwater resources are necessary to fulfill the right? What the court said, in effect, and meant by that section, is to say that New Mexico does not come into play in phase 1, which deals with whether there is a federal reserve right, and it only comes into play at the quantification stage, which is assuming there is a reserve right, how much water is necessary to satisfy the right. Right, but the Winters Test, which is phase 1, right? The Winters Test is what we're talking about in phase 1, isn't it? Right. Regarding the existence of the right, and that's a two-prong test, whether the reserve water is necessary to fulfill the purpose, and whether the water is appurtenant. So we're going to assume that the aquifer we're talking about is appurtenant to the reservation, I think, and then the question becomes necessity. So it's possible to read this as the court having ruled on one prong of the Winters Test. In other words, it's, you're going to get, the tribe's going to get the water, the reserved ruling, that it's entitled to a pertinent groundwater if it's necessary. And so what is it? Well, it goes back to this issue about, I'm not sure why it matters that much, really, whether the New Mexico test is considered at phase 1 or not, because the court has staked out here, and I read the district court as being very conscious of the fact that it's really going to have to make a determination, a much more complicated determination, and much more intensive determination about necessity. I think, in our view, is that this case raises a very fundamental question of the reserved rights doctrine, and the question is twofold, and I mentioned those in my opening comments. The first question is whether the tribe, whether the reserve, whether New Mexico's limitations come into play in determining whether there is a reserved right, and then secondly, if they do come into play, whether the tribe has a right to do so. But the important question that I think your question overlooks is that New Mexico does come into play in deciding whether there is a reserved right in the first instance. Yes. It also comes into play later in determining the quantification if there is a right. It could, counsel. I think it absolutely could, and there are different ways, that it would have been different ways to skin this cat, and that's why I think it's so important, by my read, so please correct me, that the lawyers in this case, the parties, stipulated to trifurcate. Because if you hadn't stipulated to trifurcate, or if you hadn't framed the question in phase one the way it was framed, it almost wedges itself. That trifurcation is almost a wedge between winters and New Mexico. Well, the reason we stipulated that, your honor, was that the quantification stage would be... There's going to be an extremely complicated phase in which all other water uses in the basin are going to have to come in. That's a multi year... You bet. ...adjudication of all the groundwater rights in the basin. But if the tribe doesn't have a reserved right in the very first instance, you don't need to reach that quantification stage. So that's the reason we stipulated. Well, I understand why you stipulated that, and I understand the next phases are big and lengthy and expensive, if it goes this way. So I'm not criticizing by any stretch. It's just that given that the parties decided and the court agreed that it would be efficient and appropriate to first address the existence of the right, understanding that as a given, because that's what we've got, and then understanding that this winters asks... Required the court to, in order to answer whether the right exists, had to answer whether or not access to groundwater is necessary to fulfill the purpose. Well, New Mexico looks to the same question. I can't agree with that, Your Honor. I think New Mexico did not look to the quantification issue. New Mexico looked to the question of whether there was a reserved right in the first instance. The United States has argued otherwise here, but we think the United States' argument is incorrect. In New Mexico, the Supreme Court looked at the purposes of the National Organic Act, and it concluded that the primary purposes were to conserve water flows and to provide a supply of timber, but not to provide water for environmental, recreational, and wildlife uses. And therefore, the court said, the United States does not have a reserved right for those latter purposes. And therefore, the Supreme Court did not reach the question of how to quantify the right. It simply said, these rights don't exist in the first instance. That's exactly what we're asking for this court to do. But to determine... Why isn't my distinction between a tribal reservation, which is created to support human habitation, and the creation of a national forest reservation for purposes of preventing flooding downstream and so on, and providing timber different, and therefore requires a different analysis to answer the legal question as to what water rights attend the creation of the reservation? Well, the facts are obviously very different. I mean, I could spend 10 minutes describing how the facts... But why couldn't... I guess my question is, I'll put it very directly, why couldn't we rule for the tribe applying New Mexico and say, in this instance, the creation of this type of a reservation involves different purposes than the creation of a national forest? Well, I agree with that. I think the purposes of the tribe's reservation are different from the purposes of the Gila National Forest that was involved in New Mexico. The purposes are different. But the analysis is the same. The analysis is whether the reserved right is necessary to accomplish the task, and prevent them from being entirely defeated. So the purposes in the two cases are... But doesn't that position acknowledge the possibility that depending on the type of reservation that Congress is creating, and the purpose for which it's created, the answer to the question of what water rights are appurtenant to this reservation will be different, depending on the type of reservation? Well, I think that in a broad sense, that is correct, Your Honor. The purposes are different. The needs of the holder of the reserved right might be different. Those all have to be considered in applying the New Mexico test. You've got about two minutes left. Do you wanna save some rebuttal time for your colleague? Oh, yes, I would. Certainly. Thank you. Alright. Good morning, Your Honor. My name is Catherine Munson. I represent the Agua Caliente Band of Cahuilla Indians, and I'll be splitting my time equally with counsel for the United States. How much time do you want? May it please the court. I didn't hear you. There are two points that I wanted to... How much time? Oh, sorry. I get 10 minutes to speak. 10 minutes? Okay. Yeah. Thank you. Start the clock back at 20. Okay. Okay. Great. May it please the court. I have two principal points that I wanted to make here this morning, but I wanted to first start by addressing one point that Mr. Walson made, and that was his statement that this court has held that this primary secondary distinction is applicable to Indian reservations. In fact, this court has held on two occasions, explicitly in the Adair case in particular, that the New Mexico primary secondary distinction is not directly applicable to Indian canons of construction. Adair says that New Mexico, quote, is not directly applicable to winter's doctrine rights on Indian reservations, close quote, but it also says that New Mexico established several useful guidelines. That's exactly right. And the reason... It does provide some guidelines, but the reason it's not directly applicable is so that the goal of Indian self sufficiency could be obtained. And as you can see, they were citing to Judge Canby's Indian nutshell when they cited that deed. I think counsel, I'm just trying to get to that. No, I didn't say concede, as you can see, since you have it in front of you. That's what I was saying. No, no. No, no. I'm saying as you can see, it's in front of you. They were citing to Judge Canby's. So does it matter when or whether we apply New Mexico? It doesn't matter at all. That was actually the first point that I was gonna make. And that's because the homeland purpose of the Agua Caliente reservation is a primary purpose under New Mexico's test for which water was reserved. And every case that a court has looked at the issue of whether the United States reserved water for an Indian reservation, dating back to Winters in 1908, all the way through this court's post New Mexico jurisprudence in Adair and Walton, courts have held that when the United States reserves water for an Indian reservation, water is necessary to meet that need and therefore it is reserved. But this is a big deal case, counsel. This isn't surface water. This is the first time we would have talked really directly about groundwater, right? This is a very significant issue. I don't see any reason that groundwater should be treated any differently than surface water. That's not answering the question. And I do think this court has actually addressed this issue. But the United States Supreme Court kind of undid that, right? And so when you... This is not an adversarial position. I'm just trying to be really clear that when I read your briefing, it keeps trying to, I think, convince me that this is almost an established rule and it's not, right? The Supreme Court has never ruled on the issue of whether federally reserved rights apply to groundwater. That is correct. It was very clear in Capert to make the point that it wasn't... Had not yet ruled on that issue. However, our position is that this court did rule on that issue. In the Capert case, it ruled that federally reserved rights also include groundwater and that the Supreme Court did sidestep that issue by saying, this isn't groundwater, it's surface water. It's surface water and very conspicuously sidestepped it. It sidestepped it, but it did not disavow the Ninth Circuit's ruling. It said it was a very well reasoned opinion and then it went on to hold that the groundwater, that it could enjoin the groundwater pumping. And I think a careful reading of that case, particularly the last sentence of it, it says that we have reserved a pertinent groundwater to preserve... Or pertinent water, which is the groundwater they're enjoining, to preserve the pool, the underground pool, which they actually considered surface water. I've read it carefully. I like the ones where the Supreme Court affirms us. I've read it several times, trust me. But that was different. Geologically, it's different, right? My understanding here is, of course, in that case, you have the Devil's Pool? Devil's Hole? Devil's Pool, and then the pumping that was going off, I think by a ranch, and they could literally see the pool level dropping as the ranch was pumping. And so that was very different, because I think it's uncontested here that we're talking about a water source that is distinct. Is that right? They are distinct, although there is one thing that I did wanna point out, and that is in the District Court's order certifying the case, Judge Bernal did make a slight error. He said there was no hydrologic connection between surface water and groundwater. And while the parties concede and both agree that the groundwater doesn't feed the surface water, it's not true that the surface water doesn't feed the groundwater. Are you referring to the injection of water from the Colorado River into the aquifer? That is part of it, yes, Your Honor. The Water District's recharge program is based upon spreading surface water into the valley floor and letting it down to recharge the aquifer. Also, the Whitewater River flows into the ground and also recharges the aquifer, and you'll find that... And during what portions of the year is there surface water in the Whitewater River? Every time I drive down there, it's usually a dry creek bed. Yeah, I can't answer the question of what month of the year. I do know that it does not flow 12 months of the year. It is... The tribes right in that surface adjudication is really... It's a paper right only that water does... In those creeks, the water just does not flow. Right, so what do I make of the places in the record where you indicate, I think, to the... And you quantify the extent to which the tribe is relying on its surface rights from the creeks, and yet is still in a position to be injecting additional water from the creeks back into the aquifer. It's confusing that you've got both those things in your brief. I'm sorry, could you state that question again? Yes. You have, and I'm frantically looking for all of the millions of notes that we compiled ahead of time. Oh, it's right here. The tribe has surface rights to, is it two or three creeks? Two creeks, Backwoods Creek and Andreas Creek. And Andreas Creek, and you give us a quantification of how much you rely upon the creeks for your water supply, but your brief also says that you're reintroducing water from the creeks back into the aquifer. Right. I would say that the tribe is not really relying on the creeks for its water supply, though the right itself is... Well, they're getting all their water right now from the Coachella Valley. We are getting, yeah, and it's all ground water. So why is there a difference between it's all ground water? Oh, the water... From the districts, yes. From the districts, yes. The water that we get from CBWD, 100% of that water is ground water, about 75% to 85% of the water that we get from DWA is ground water, and that total is about 10,000 acre feet of water annually. The tribe doesn't... To your question, the tribe doesn't really rely on the surface water. The Backwoods Creek just flows right into the ground to recharge the aquifer. Andreas Creek has very limited use. It's not a water resource that the tribe relies on. In fact, the parties have stipulated that we're not gonna be seeking surface water in this case. This case is about ground water. Right. Yeah. The second point that I wanted to make is that the water districts are arguing that this court should reach a different outcome here, relying on California's correlative rights doctrine. They argue that the tribe doesn't need a federally reserved right because it has rights under California correlative rights doctrine. They're basically asking for California groundwater exception to federally reserved rights to groundwater. But there's several reasons this argument fails. First, as Judge Talman pointed out earlier, federal reservations of water create federal rights that are not subject to state law. The Supreme Court instructed this in Arizona versus California, when it's a big... The reservations are governed by the statutes, executive orders, and treaties establishing the reservations. This is reaffirmed in Cape Verde, and again by this court in Walton. And although Congress has the power to cede this authority, and has done so in other circumstances to the states, it has not done so here. In New Mexico, the case upon which appellants rely on the most, the court is very clear that Winters is an exception to Congress's explicit deference to Congress on state law in other areas. But they point to no instance where Congress has deferred to state law with respect to Indian reservations. Do you agree that New Mexico has to be applied at some point? New Mexico is governing law. I think it's consistent with the dare. It's gonna have to be used as a guidepost, as opposed to directly applicable. It's hard to see how... It just doesn't work when you're talking about a homeland purpose for a tribe. And then just real quick, because I know we wanna hear from the United States. The Sustainable Groundwater Management Act also acquiesces to the federal supremacy with respect to federally reserved rights. It holds that if there's ever a conflict between federal rights and state groundwater rights, that federal reserve rights shall be respected in full. And then lastly, and this is really important, is that the tribe's rights to... Correlative rights to groundwater would not be adequate to protect the tribe's federally reserved rights. Federal reserve rights are meant to ensure that water is available in the full amount to meet the reservation's needs, but correlative rights are variable and subject to diminishment based on other parties' and other water users' needs. And this is a test that the Supreme Court has rejected as having been applied to federally reserved rights. It rejected it in Arizona v. California, Cape Verde, and then this court also in Walton. So essentially what you're saying, to put this in more layman's terms, is they're competing with the golf courses and the resorts and the people who live in Palm Springs and so on for priority over that water. That's right. And if there was ever an adjudication of the groundwater, the tribe's rights would, under California law, would be subject to diminishment based on those competing users' rights. Particularly if the supply of water to the water districts is reduced. Correct. Correct. Counselor... Oh, you have a question? Yes. Sorry. I can see you're packing up, but I just don't go anywhere yet. At paragraph 32, I found my note. At paragraph 32, your complaint says that the Whitewater River Decree entitles the tribe to about 8,000 acre feet per year. That's right. Where's that come from? Is that surface? Oh, yes. That's the surface adjudication to Takowitz and I'm understanding. And so I'm just trying to put that together with... At ER 231, 232, it says the most recent numbers, which are dated, it's 2011 to 2013. It shows that the tribe is purchasing less than that, 6,100 to 6,300 acre feet. So that's why I'm trying to put together... His argument is that this existence of this right depends upon the tribe showing that it is necessary to fulfill the purpose. Well, the tribe's water use at any point in time isn't relevant. And it's a presently perfected right as of the date of the establishment of the reservation. And it's for the present and future uses. So as an initial matter, the tribe's use of water at any point in time isn't relevant. But to your question, within... The tribe is using 10,000 acre feet of water, and that's based on our discovery responses. Oh, where do I have that? And that's NCR 217 to 232. Sorry, 217... But the bulk of that water comes from the water district. That's from the water district, correct. Yes. I appreciate that. But the numbers are backwards. And so if it's NCR 217 to 232, that's where I'm gonna find 10,000. Yeah. Okay. Alright. Thank you. Thank you. We'll hear from the United States. Thank you, Your Honor. And may it please the Court, I'm Elizabeth Ann Peterson for the United States. I just wanna make two primary points. And one... The primary point here is that state law can't defeat a federal reserve water right. And the only theory here is that if the tribe could achieve the purposes of its reservation using state law water rights, then it doesn't need a federal water right. But when the United States reserved this land for a tribe, it reserved at the same time sufficient water for the long term subsistence of this tribe on that land. So that the manner in which the state has chosen to administer water rights is irrelevant to the existence of the tribe's water rights. The purpose of this reservation is broad, and the district court summarized it as establishing a home for the tribe. Is that contested? I don't believe so, Your Honor. And I believe what the water districts say is that that would create a situation where New Mexico didn't work because you can't have just one big broad purpose. I'm not sure that's consistent with this court's law, but to the extent that it isn't, if it isn't, that's a question for the quantification phase because clearly the homeland purpose of this reservation implies a substantial reserved water right. And I'd like to push back just a little bit on this court's law on the reservation of ground water. In Capert, the Supreme Court said, we hold that the United States can protect its water from subsequent diversion whether the diversion is of surface or ground water. Yes. That here... But it was a connected system there, hence my earlier question, and the court was very clear to sidestep and say this is surface water at issue in that case. I agree that those two facts are correct, but I don't agree that that means that that is not a directly applicable ruling here, and I'll explain why I think that. The water here, the ground water here is a part of the land that was reserved for the Indians over which the United States had complete dominion at the time of the reservation. That water was then reserved along with the land to the extent that it was necessary for the purpose for which the land was reserved, the Indian reservation. If that water is going to provide the necessary resource for the long term use of the interest of the tribe, and here it's being subjected to diversions by others that may threaten the long term value of that right or availability of that water to the tribe. So I see very little distinction factually between pulling the water out from under the fish and pulling the water out from under the tribe. It isn't a factual distinction. I think you're opposing counsel would say it's a legal distinction, which is the United States Supreme Court has never gone there, not gone, extended the Winter's Doctrine to groundwater, right? Except that it said that the groundwater that the Caperts were pumping was reserved for the fish. I understand that. As I said, I like it when they affirm us, but they were very clear there to say that's surface water, and that was a connected system. Their water wasn't surface water, though. The fish was... Yeah, I know what the case is. I've read it. Okay. But the issue here is you have this underground aquifer which extends under and beyond the boundaries of the reservation, correct? Actually, the reservation in some pieces looks like a jigsaw puzzle... Checkerboard. Checkerboard. And you have a number of different users of that water, including the communities that have grown up around and within the reservation that are not in Indian country. And everybody is drawing water out of that underground aquifer. And they're trying to recharge it with water brought in from the Colorado River and, I don't know, maybe from the state water project, but they're taking out more than they're putting back in, correct? That is correct, and it has been true... That's what makes phase two such a difficult endeavor for the district court if it gets that far. Right. It is a complicated question to determine how to administer a reserved right in the circumstances of the state law regime that are present here. Council said... Not opposing, but sorry. Council for the tribe said something that I think is a really important clarification. I think it is uncontested that this is an unrelated system in that the aquifer isn't feeding the groundwater, but what council for the tribe said is that the surface water may be feeding the aquifer. Do you have a position on that? That's correct. Our brief also says that, Your Honor. In other words, the district court reached the wrong conclusion in calling it a lack of hydrological connection. There is a one-way connection. Thank you. Thank you for that clarification. We had pretty well worked that out from the record, but it's an important point, so thank you. Yes. The one remaining point about state law that I wanted to make is that this court in Adair made clear that a federal reserve water right can be recognized whether or not a corollary right is available under state law. So the unavailability of the kind of right that was reserved here in a correlative right system is irrelevant to the existence of the reservation's federal reserve water right under this court's law, and that takes into account New Mexico. So I think, essentially, I have very few points to add. I think the court has addressed most of the important points. I think that the issue here is whether New Mexico changed necessity, which it did not, and whether state law can defeat a federal reserve water right, which it cannot, as a matter of law. Is the United States' position that, or do you agree, that New Mexico is going to have to be applied at some point in the litigation? New Mexico is applicable law, so it may be considered. In the event that there are not multiple purposes determined for this reservation, I'm not certain whether the rule in New Mexico actually changes anything very important here. But we haven't gotten there yet, right? Right. It's about how much water was reserved. And the circumstances of that case were where Congress came back and said, oh, and we want this land to do these additional things, too. And the question was whether by doing that, it had reserved additional water. And that was what the court's answer was no to. And in this case, nothing like that has happened. So whether New Mexico makes a difference in considering rules for a reservation like this is open to question. I'm not certain that it has any relevance whatsoever. Thank you, Ms. Peterson. Always a pleasure to hear from you. Thank you. You're welcome. All right. Good morning, Your Honor. Steve Abbott for the Water Districts. In reply, I want to address the trification issue. The specific agreement to trificate was phase one would deal with, quote, whether the tribe's rights to groundwater, both in the form of In our view, you cannot make the conclusion that the tribe has winter's rights to groundwater without first applying the necessity test of New Mexico. It applies in two phases, whether the right even exists. We briefed that issue. We put before the court evidences of the purpose of the reservation. The broadest definition came in the 1877 memo from the field agent just before the second executive order was issued. First purpose of the department is to now ensure the Michigan Indians permanent homes so they get a domestic use with land and water enough that each one who will go upon the reservation may have in order to cultivate a piece of ground, irrigation. Those are the two purposes. You then judge whether the reservation would entirely fail if you fail to recognize a reserved right. When you take into account that California law gives them a correlative right that raises them to an equal status to the railroad lands that join them in the alternating sections, which predated the reservation. Those railroad lands water rights can't be taken away by the executive order creating the reservation. We believe the trial court erred by putting that issue off to the quantification phase. You can't say there's a reserved right to groundwater unless you have applied the necessity test in the first instance. But as I said, at EOR9, the district court concluded by saying whether groundwater resources are necessary to fulfill the reservation's purpose is a question that must be addressed in a later phase of this litigation. So it's not he's not gonna address it, he's gonna address it. After we go through tremendous expense, we have phase two issues, which tear off the conclusion that there's a reserved right to groundwater. I think that might be right, but this is how you trifurcated the case. Yeah. We did not trifurcate... You almost invited error if that's the case here, because you all stipulated to the trifurcation. And the trifurcation we stipulated to was he would decide whether there's a reserved right to groundwater in phase one. He hasn't made the necessity determination to arrive at that conclusion. He has put it off to the other phase. That is what we contend is reversible error. He should have ruled on it in this phase. Okay. Go ahead. Make one more point that you're... Just to talk about the hydrology. The natural recharge of the basin, and this comes from their excerpts page 208, 62,000 acre feet a year. That's for the entire groundwater basin for the entire valley. There are other Indian reservations in this valley as well. Although that's pretty dated information, as I indicated. But yes, I've got that site. Yeah. And then the water districts bring in a tremendous amount of water. In the lower valley, the district brings in 330,000 going up to 459,000 Colorado River water through the Coachella Canal. The two districts exchange with the Metropolitan Water District, their state water project water, for Colorado River water out of the Metropolitan Aqueduct. The table I wrote that the districts had for state water project water was 61,000 acre feet a year. In the early 2000s, we increased that entitlement up to 187,000 acre feet a year. And so the districts recharge that water at the Whitewater Recharge Facility. It's also where the district applies its junior appropriative right on the river, which is subordinate to the decreed rights to the tribe, to recharge what flow is left in the Whitewater River, which is mostly storm flows and snow melt in the winter and spring. But we still have a net shortage, right? Despite our best efforts. And the water districts are working to eliminate the overdraft. That's why we've increased our supplies of imported water. The water supply chapter of Coachella Valley's water management plan is in the excerpts of record, and it discusses the things the districts are doing. Getting the golf courses off of groundwater onto reclaimed water. That's what Desert did with the golf course that the tribe purchased. Bringing in additional Colorado River water to supply the golf courses, to get irrigators onto Colorado River water who are currently pumping groundwater. We have a responsibility to manage this basin in the long term. There's 30 million acre feet in storage. We have plenty of time to fix the problem. May I ask one more question, Judge Toynbee? Of course. No, no, no. I do think it's important that this is presented at various places in the briefing, as though these are two entirely separate and not related sources of water. That the surface water and the aquifer are distinct, and in that way, different from Kephart. But is it your position that the district court maybe got that wrong? That the surface water may actually reinforce the groundwater, even though the groundwater doesn't reinforce the surface water? Yeah. The tribe's admission, which we cited in our briefs, was that the groundwater does not contribute to or support the surface streams. That part we've got. What about the other way around? White Water River clearly recharges the groundwater basin. Whether the other streams get that far down to percolate any water into the groundwater basin, I'm not sure is clear on the record. All right. Thank you. And thank you for your patience. Counsel, thank you all for your argument. It's a very interesting and significant case, and we appreciate the importance of the decision you have laid at our feet. We'll get you an answer as soon as we can. The case just argued is submitted for decision, and we are in recess until tomorrow morning.
judges: Tallman, Christen, Kennelly